IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADRIENNE ESCOBAR | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA HIGHER EDUCATION | : | |
| ASSISTANCE AGENCY SERVICES, LLC | : | NO. 17-4212 |

## MEMORANDUM

**Padova, J.**                                                                                       April 10, 2018

Plaintiff has brought this lawsuit against Defendant Pennsylvania Higher Education Assistance Agency Services, LLC ("PHEAA") pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), asserting that PHEAA failed to conduct reasonable investigations in response to disputes of debt it reported to credit reporting agencies. PHEAA has moved to dismiss the Complaint as time-barred by the applicable statute of limitations. We deny the Motion for the reasons set forth below.

**I.      BACKGROUND**

The Complaint alleges that, more than ten years ago, Plaintiff's mother, Julie Escobar, took out a student loan in Plaintiff's name.[1] (Compl. ¶ 1.) Escobar took out the loan for her own benefit, and did so by forging Plaintiff's name on the loan documents. (Id.) Escobar failed to make timely payments on the loan and it went into default. (Id. ¶ 2.) This defaulted student loan was reported on Plaintiff's credit reports. (Id.) In May 2008, Escobar sent a letter to PHEAA in which she confessed that she, not Plaintiff, had taken out the loan and offered to complete any paperwork PHEAA needed to press charges against her. (Id. ¶ 3.) Notwithstanding Escobar's confession, PHEAA continued to inform Credit Reporting Agencies

---

[1] For the sake of clarity, we refer to Plaintiff Adrienne Escobar as "Plaintiff" and to her mother, Julie Escobar, as "Escobar."

("CRAs") that Plaintiff was responsible for the defaulted loan and referred Plaintiff to a debt collector. (Id. ¶ 12.) Plaintiff did not learn that Escobar had confessed to the identity theft until the year before she filed the instant Complaint. (Id. ¶ 11.)

In August 2014, Plaintiff filed a dispute of this defaulted loan with two CRAs. (Id. ¶ 18.) The CRAs, in turn, sent automated credit dispute verifications ("ACDVs") to PHEAA. (Id. ¶ 19.) On August 6, 2014, Equifax sent an identify fraud ACDV to PHEAA and requested a fraud investigation. (Id. ¶ 20.) On August 28, 2014, April Carter, who processed the Equifax ACDV for PHEAA, responded that Plaintiff "had a charged off student loan with an unpaid balance reported as a loss by a credit grantor that had been transferred to recovery." (Id.) Plaintiff contends that this response could only have resulted from "a negligent and reckless investigation . . . in light of the previous confession and affidavit that the identity thief had sent to [PHEAA]." (Id.) PHEAA did not contact Plaintiff about the identity theft claim. (Id.)

On August 13, 2014, TransUnion issued an ACDV to PHEAA. (Id. ¶ 21.) Leigh Wenerick responded to the TransUnion ACDV on behalf of PHEAA on September 5, 2014. (Id. ¶ 22.) Wenerick reported that Plaintiff was responsible for the defaulted student loan. (Id.) On September 9, 2014, Equifax issued another identity theft ACDV to PHEAA, in which it requested another fraud investigation. (Id. ¶ 23.) On September 30, 2014, Ryan Oswandel responded to this Equifax ACDV on behalf of PHEAA. (Id. ¶ 24.) Oswandel reported that Plaintiff "had a defaulted student loan with an unpaid balance reported as a loss that had been transferred to recovery." (Id.)

On June 19, 2015, Plaintiff filed a police report with the San Angelo, Texas police department related to the PHEAA student loan. (Id. ¶ 26.) In the police report, Plaintiff identified her mother as the person who had used her identity. (Id.) On August 16, 2015,

Plaintiff sent a second credit dispute package to the same two CRAs, including a letter requesting that the CRAs remove the PHEAA student loan from her record because of fraud. (Id. ¶ 27.) She also asked the CRAs to put an extended fraud alert on her credit report. (Id.) Her letter stated that she did not take out the student loan, did not sign the promissory note, and had never made a payment on the loan. (Id.) Plaintiff included a copy of the June 19, 2015 police report in the loan dispute package. (Id.)

On August 26, 2015, TransUnion updated Plaintiff's credit file by adding the requested extended credit alert. (Id. ¶ 28.) On August 26, 2015, TransUnion issued another ACDV to PHEAA, informing it that Plaintiff claimed identity fraud and that the student loan account was fraudulently opened. (Id. ¶ 29.) TransUnion attached Plaintiff's dispute letter and police report to the ACDV. (Id.) On September 21, 2015, Jessica Donella responded to the new TransUnion ACDV on behalf of PHEAA. (Id. ¶ 30.) Donella updated Plaintiff's account by repeating PHEAA's report of the derogatory information related to the defaulted student loan. (Id.) PHEAA's response ignored Plaintiff's dispute letter and police report. (Id.)

In September 2015, Equifax issued two ACDVs related to the defaulted student loan, one was sent to TransWorld Systems, Inc., a debt collector that was attempting to collect on the student loan; the other was sent to PHEAA. (Id. ¶ 31.) After it received the ACDV, "TransWorld Systems instructed Equifax to delete the account for fraud." (Id. ¶ 32.) Ordinarily, a debt collector would contact the lender, PHEAA, prior to giving such an instruction. (Id.) Nonetheless, two weeks later, April Carter responded to the Equifax ACDV on behalf of PHEAA by "stating that the current past due balance [on the defaulted student loan] was $38,571 and that the account had been transferred to recovery." (Id.)

TransUnion subsequently issued another ACDV to PHEAA based on additional information sent to it by Plaintiff. (Id. ¶ 33.) On October 22, 2015, Randi Lynn Kolva responded to this TransUnion ACDV on behalf of PHEAA. (Id. ¶ 34.) Her response did not ask TransUnion to delete the account or update its credit reporting. (Id.)

In October 2015, Equifax issued a new ACDV to PHEAA, informing PHEAA that Escobar was the perpetrator of the identity fraud and that Escobar was Plaintiff's mother. (Id. ¶ 35.) On October 31, 2015, Tamika Dawson responded to Equifax's ACDV on behalf of PHEAA. (Id. ¶ 36.) She did not acknowledge the identity theft, rather she informed Equifax that the total outstanding balance for the student loan was $38,571.00. (Id.)

In May 2016, Plaintiff again sent a credit dispute package to the CRAs. (Id. ¶ 37.) In response, the CRAs deleted the reference to the student loan in Plaintiff's credit report. (Id.) On May 17, 2016, TransUnion notified PHEAA that it had deleted the student loan account from Plaintiff's credit report for fraud. (Id. ¶ 38.)

Despite all of the information it had received regarding Plaintiff's claim that the student loan was procured through identity theft, PHEAA harassed Plaintiff in an attempt to collect on that debt. (Id. ¶ 38.) In November 2016, TransWorld Systems placed another collection account related to the student loan on Plaintiff's Equifax credit file. (Id. ¶ 39.) PHEAA's actions have damaged Plaintiff's credit, resulting in limited access to credit, credit denials, frustration, aggravation, and humiliation, and have also damaged Plaintiff's relationships with her family members. (Id. ¶ 40.)

The Complaint asserts one claim for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), alleging that PHEAA failed to conduct reasonable investigations with respect to the disputes it received as part of seven different ACDV investigations. (Id. ¶ 42.) Plaintiff

seeks compensatory damages, punitive damages, statutory damages, interest, costs and reasonable attorney's fees. PHEAA has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and "'construe the complaint in the light most favorable to the plaintiff.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "'a short and plain statement of the claim,'" which gives "'the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2), and Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability

5

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "A complaint that pleads facts 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.'" Connelly v. Lane Constr. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (alteration in original) (quoting Iqbal, 556 U.S. at 678). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

### III. DISCUSSION

PHEAA argues that the entire Complaint, or, in the alternative, a portion of Plaintiff's claim, must be dismissed because Plaintiff's claim is time-barred by the FCRA's statute of limitations. The FCRA provides as follows:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of --
>
> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
>
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p. PHEAA contends that Plaintiff's claim is time-barred because she was aware of the identity theft alleged in the Complaint more than two years before she filed the instant lawsuit.

Generally, the statute of limitations is not an appropriate ground for a motion to dismiss brought pursuant to Rule 12(b)(6), and an exception is made only "'where the complaint facially

6

shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" Budzash v. Howell Twp., 451 F. App'x 106, 109 (3d Cir. 2011) (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)). "Statute of limitations issues normally implicate factual questions . . . therefore, a defendant bears a heavy burden in seeking to establish as a matter of law that the challenged claims are barred." Bionix Dev. Corp. v. Sklar Corp., Civ. A. No. 07–4465, 2009 WL 3353154, at *5 (E.D. Pa. Oct. 14, 2009) (citing Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 498 (3d Cir. 1985)).

  A. Application of the Statute of Limitations to Plaintiff's Entire Claim

PHEAA recognizes that, while the United States Court of Appeals for the Third Circuit has not interpreted the FCRA's statute of limitations, courts in this Circuit have "held that an action is timely if a plaintiff alleges that a furnisher of information 'continued to report [inaccurate] information to [the credit bureaus] within the statutory period, regardless of whether it had begun reporting prior to the two year statute of limitation.'" Van Veen v. AT&T Corp., Civ. A. No. 10-1635, 2011 WL 4001004, at *4 (E.D. Pa. May 25, 2011) (alterations in original) (quoting Jaramillo v. Experion Info. Sols., Inc., 155 F. Supp. 2d 356, 360 (E.D. Pa. 2001)). However, PHEAA argues that we should reject this interpretation of the statute, because it results in "essentially eliminating any statute of limitations by a consumer simply re-submitting a credit dispute at any time in the future." (Def.'s Mem. at 4.) PHEAA maintains that the limitations period should begin to run when a plaintiff first learns of the mistake on his or her credit report, notwithstanding any subsequent reporting of that mistake. See, e.g. Mack v. Equable Ascent Financial, LLC, Civ. A. No. 11-793, 2013 WL 183646, at *5 (E.D. Tex. Jan. 17, 2013) (stating that the statute of limitations began to run on plaintiff's FCRA claim when plaintiff received his

7

credit report); Hatten v. Experian Info. Sols., Inc., Civ. A. No. 12-12236, 2013 WL 5179190, at *4 (E.D. Mich. Sept. 12, 2013) (rejecting argument that plaintiff's "repeated attempts at resolving the issue [with her credit report] tolled the FCRA's statute of limitation" because, where "the underlying complaint relates to recurring violations stemming from the same original incident, and the alleged violations are triggered every time Plaintiff files a dispute, Plaintiff would be able to extend the statute of limitations indefinitely simply by filing subsequent complaints as the two year period nears its end").

"Federal courts are split on the question of whether each separate notice of dispute triggers a duty to investigate even if the information has been disputed previously." Vasquez v. Bank of Am., N.A., Civ. A. No. 15-4072, 2015 WL 7075628, at *3 (N.D. Cal. Nov. 13, 2015). "The majority of courts have concluded that 'each separate notice of dispute triggers a duty to investigate the disputed information, regardless of whether the information has been previously disputed,' and each time a furnisher fails reasonably to investigate the dispute results in a new FRCA violation." Id. (quoting Marcinski v. RBS Citizens Bank, N.A., 36 F. Supp. 3d 286, 290 (S.D.N.Y. 2014) (remaining citations omitted)).

We are not persuaded by PHEAA's argument that we should follow the federal courts that have concluded "that allowing a second dispute letter to trigger a new statute of limitations would permit plaintiffs 'to indefinitely extend the limitations period by simply sending another complaint letter to the credit reporting agency.'" Id. (quoting Bittick v. Experian Info. Sols., Inc., 419 F. Supp. 2d 917, 919 (N.D. Tex. 2006) (remaining citations omitted)). The FCRA requires a furnisher of credit information to perform the following duties after it receives notice of a dispute regarding the accuracy of the information that it provided to a CRA: "(A) conduct an investigation with respect to the disputed information; (B) review all relevant information

provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title; [and] (C) report the results of the investigation to the consumer reporting agency . . . ." 15 U.S.C. § 1681s-2(b)(1). "Given the FCRA's language, as well as its purpose, each alleged failure of [the furnisher of credit information] to comply with [its] FCRA obligations constitutes a separate FCRA violation, even though the violations stem from the same allegedly false or inaccurate credit information." Marcinski, 36 F. Supp. 3d at 290. "Thus, each separate notice of dispute triggers a duty to investigate the disputed information, regardless of whether the information has been previously disputed." Id. Consequently, "[t]he statute's construction creates a violation every time a consumer submits a dispute to a credit reporting agency and that agency or the relevant lender does not respond to the complaint as directed by the statute." Broccuto v. Experian Info. Sols., Inc., Civ. A. No. 07-782, 2008 WL 1969222, at *4 (E.D. Va. May 6, 2008). "The fact that the account or transactions questioned in the instant dispute may have also been the subject of a previous dispute does not mitigate the obligations of the bank or credit reporting agency to take the actions outlined in § 1681s-2(b)(1)(A)-(D)." Id. See also Jenkins v. Chase Bank USA, N.A., Civ. A. No. 14-5685, 2015 WL 4988103, at *7 n.6 (E.D.N.Y. Aug. 19, 2015) ("[W]here FCRA violations are based upon a furnisher's obligations under Section 1681s–2(b)(1), 'each separate notice of dispute triggers a duty to investigate the disputed information' which triggers its own separate statute of limitations." (quoting and citing Marcinski, 36 F. Supp. 3d at 290) (additional citation omitted)); Young v. LVNV Funding LLC, Civ. A. No. 12-1180, 2013 WL 4551722, at *3 (E.D. Mo. Aug. 28, 2013) (holding that "'each re-report of inaccurate information, and each failure to conduct a reasonable investigation in response to a dispute, is a separate FCRA violation subject to its own statute of limitations'" (quoting Cathcart v. Am. Express, Civ. A. No. 11-2125, 2012 WL 5258820, at *2 (E.D. Mo. Oct. 23, 2012))).

We conclude, accordingly, that each time a CRA sent an ACDV to PHEAA, PHEAA was obliged anew to investigate the accuracy of its information regarding the disputed student loan, and any failure on its part to reasonably conduct that investigation triggered the running of a new limitations period with respect to that investigation. See Maiteki v. Marten Transportation Ltd., 4 F. Supp. 3d 1249, 1254 (D. Colo. 2013) (holding "that each re-report of allegedly false information triggers a new duty to conduct a reasonable investigation, which in turn restarts the limitations period for an FCRA claim based on the failure to conduct a reasonable investigation" (citing Larson v. Ford Credit, Civ. A. No. 06-1811, 2007 WL 1875989, at *4 (D. Minn. June 28, 2007))). "This conclusion is consistent with the purpose of the FCRA." Marcinski, 36 F. Supp. 3d at 290. "In enacting the statute, Congress recognized a 'need to ensure that those parties which controlled a consumer's credit history and therefore access to future credit exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.'" Id. (quoting Broccuto, 2008 WL 1969222, at *4). "The FCRA expressly states that its purpose is to ensure consumer reporting procedures that are 'fair and equitable to the consumer.'" Id. at 291 (quoting 15 U.S.C. § 1681(b)). "Were the Court to hold that the duties of a furnisher of credit lapse once an initial investigation is undertaken in regard to disputed information, it would contravene both the statutory language and the stated intent of the FCRA." Id. We therefore deny the Motion to Dismiss with respect to PHEAA's argument that the entirety of Plaintiff's claim is barred by the applicable statute of limitations because she was aware of the identity theft issue more than two years prior to filing the instant Complaint.

B. Application of the Statute of Limitations to ACDVs Issued in 2014

PHEAA argues that, if this action is not entirely time-barred, a portion of Plaintiff's claim is barred by the statute of limitations because it arose from credit disputes that she filed more

than two years prior to filing the instant Complaint. Specifically, PHEAA asks us to dismiss that portion of Plaintiff's claim that arises from three ACDVs that were sent to PHEAA in 2014. As we discussed earlier, the Complaint alleges that Plaintiff filed a dispute with two CRAs in August 2014. (Compl. ¶ 18.) On August 6, 2014, Equifax issued an identity fraud ACDV to PHEAA and PHEAA responded to that ACDV on August 28, 2014. (Id. ¶ 20.) On August 13, 2014, TransUnion issued an identity theft ACDV to PHEAA and PHEAA responded to that ACDV on September 5, 2014. (Id. ¶¶ 21-22.) On September 9, 2014, Equifax issued another identity theft ACDV to PHEAA and PHEAA responded to that ACDV on September 30, 2014. (Id. ¶¶ 23-24.) PHEAA maintains that Plaintiff's claim should be dismissed to the extent that it pertains to PHEAA's investigation of these three ACDVs, because it conducted its investigations in August and September of 2014, more than two years before Plaintiff filed the Complaint on September 20, 2017.

Plaintiff contends that her claim is not untimely as it relates to the 2014 ACDVs because the statute of limitations did not begin to run as to this aspect of her claim until she learned that PHEAA's investigations of those ACDVs were unreasonable. She maintains that the evidence will demonstrate that she did not know and could not have known what information PHEAA had when it investigated the 2014 ACDVs and, thus, the statute of limitations did not begin to run on that portion of her claim at the time of PHEAA's investigations in August and September 2014.

As we discussed earlier, the FCRA's statute of limitations begins to run "2 years after the date of **discovery by the plaintiff of the violation that is the basis**" for her claim. 15 U.S.C. § 1681p(1) (emphasis added); see also Yarish v. Downey Fin. Corp., Civ. A. No. 08-00380, 2009 WL 1208178, at *2 (E.D. Va. Apr. 28, 2009) ("A FCRA plaintiff . . . only has two years from the date he discovers the violation to file his claim.") Plaintiff's claim is based on PHEAA's

alleged violation of the FCRA by failing to conduct reasonable investigations of seven different disputes of the credit information that it had furnished to TransUnion and Equifax regarding Plaintiff. (Compl. ¶ 43.) Consequently, according to the plain language of the FCRA, the statute of limitations began to run on each portion of her claim when she discovered each allegedly unreasonable investigation conducted by PHEAA. See Marcinski, 36 F. Supp. 3d at 290 (concluding, "based on the unambiguous language of the FCRA as well as its stated purpose," that the statute of limitations began to run on the plaintiff's claims that two information furnishers had failed to conduct adequate investigations in connection with his disputes of his credit reports when he "discovered that Defendants had failed to comply with their FCRA duties in connection with" those disputes); see also Zahran v. Bank of Am., Civ. A. No. 15-C-1968, 2015 WL 4397779, at *4 (N.D. Ill. July 17, 2015) (stating that "the statute of limitations begins to run on a § 1681s–2(b) claim not when the plaintiff discovers the erroneous reporting but when it becomes clear that the furnishing entity or entities 'failed to comply with their FCRA duties' to investigate and correct any erroneous reports" (quoting Marcinski, 36 F. Supp. 3d at 290)).

The Complaint does not allege the date of Plaintiff's discovery that PHEAA had conducted an unreasonable investigation of the 2014 ACDVs. We therefore cannot determine, from the face of the Complaint, whether Plaintiff was aware of PHEAA's allegedly unreasonable investigations of the 2014 ACDVs more than two years before she filed the instant Complaint on September 20, 2017. We conclude, accordingly, that it would not be appropriate to dismiss the portion of Plaintiff's claim that arises from the three investigations conducted by PHEAA in August and September 2014 based on the expiration of the applicable statute of limitations. See Budzash, 451 F. App'x at 109 (stating that the statute of limitations normally "cannot serve as a

basis for granting relief under Rule 12(b)(6)" and recognizing that an exception to that rule will only be made "'where the complaint facially shows noncompliance with the limitations period'" (citing and quoting <u>Oshiver</u>, 38 F.3d at 1384 n.1)). We consequently deny the Motion to Dismiss as to PHEAA's argument that Plaintiff's claim is time-barred to the extent that it arises from PHEAA's August and September 2014 investigations.

## IV. CONCLUSION

For the reasons stated above, we deny PHEAA's Motion to Dismiss in its entirety. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.